UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CABLE SYSTEMS INSTALLATIONS CORP., | : | Hon. Joseph H. Rodriguez |
| Petitioner, | : | Civil Action No. 12-1912 |
| v. | : | MEMORANDUM OPINION & ORDER |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 351, | : : | |
| Respondent. | : | |

This matter is before the Court on a Petition and Motion to Vacate an Arbitration Award [1, 2] filed by Cable Systems Installations Corporation ("CSI"), and on a Cross-Motion to Confirm an Arbitration Award [12] filed by International Brotherhood of Electrical Workers, Local Union 351 ("Local 351").

Background

Petitioner CSI is a California electrical contractor with its principal place of business at One Bridge Plaza North, Suite 260, Fort Lee, NJ 07024. (Affidavit of Brian P. Dick ("Dick Aff."), ¶ 2). Respondent Local 351 is a labor union that is party to a collective bargaining agreement with the Southern Division of the Southern New Jersey Chapter, Inc., National Electrical Contractors Association ("SNJ NECA"), effective October 1, 2008 until at least September 30, 2011 ("CBA"). (Dick Aff., ¶ 4, Ex. 1.) On January 11, 2011, CSI signed a Letter of Assent with Local 351, represented by signatory Edward H. Gant ("Gant"), Business Manager of Local 351, which authorized SNJ NECA to be CSI's collective bargaining representative for all matters contained in or pertaining to the CBA. (O'Brien Cert., Ex. 1.) The Letter of Assent also states that CSI agreed to be bound by the CBA. (Id.; Dick Aff., ¶ 5.)

On December 20, 2011, counsel for Local 351 sent correspondence to CSI and another company, Wind Turbine and Energy Cables Corp. ("WTEC"), alleging that CSI and WTEC were in violation of the CBA with respect to solar installation work being performed in Vineland, Cumberland County, New Jersey.  (Dick Aff., ¶ 7, Ex. 2.)  The letter stated, "[s]teps are being undertaken to secure your compliance with the Agreement with the Local Union," suggested that CSI contact Local 351's Business Manager, and requested that CSI or its counsel contact counsel for Local 351.  (Dick Aff., Ex. 2.)[1]

CSI claims that none of its employees performed any work on the Vineland project. (Dick Aff., ¶ 6.)  Local 351, however, has asserted that a Robert J. McConathey certified that he was an agent of CSI when he applied for a permit on behalf of CSI on October 21, 2011 to conduct $779,000 worth of electrical work at the Vineland site. (O'Brien Cert., Ex. 5, 6.)  In addition, on October 7, 2011, WTEC filed a construction permit application for building ($9,221,000) and electrical ($779,000) work at the Vineland site, with Robert McConathey signing off as WTEC's agent on a subsequent request for plan review.  (O'Brien Cert., Ex. 3, 4.)  The contractor's address, phone number, license number, and Federal Employer ID number provided were identical for WTEC and CSI.  On November 29, 2011, a permit was filed for the same job site, changing the contractor to Robert J. McConathey/AGEE LLC.  (O'Brien Cert., Ex. 7.)

---

[1]CSI argues that the letter was not a grievance and did not state that Local 351 had filed a grievance or intended to file a grievance against it. (Dick Aff., ¶ 7.)  In addition, CSI claims that no one at CSI "with responsibility for this matter," including CSI's Associate General Counsel, saw the letter until after January 3, 2012. (Dick Aff., ¶ 7.)

Thus, on December 28, 2011, Joseph Knecht, Jr. ("Knecht"), Secretary of the Southern New Jersey Labor Management Committee ("Committee") and one of the Committee's members representing employers, sent correspondence addressed to "CSI/WTEC" stating that the Committee scheduled a hearing "for your company" on January 3, 2012 at 10:00 a.m. "regarding alleged violations of Local Union 351's Collective Bargaining Agreement over work on a solar installation project in Cumberland County N.J." (Dick Aff., ¶ 8, Ex. 3.)

Counsel for CSI responded to Knecht's letter on December 30, 2011 requesting a two-week postponement of the January 3 hearing on the grounds that counsel had recently been retained by CSI, counsel and CSI were not available on January 3 to attend the hearing, CSI had never received a grievance concerning the subject of the hearing, CSI was not notified of the existence of an alleged grievance prior to its receipt of Knecht's December 28 letter, and CSI had no information concerning the nature of the alleged dispute. (Certification of David A. Tango ("Tango Cert."), ¶ 4, Ex. 1 .) Knecht sent counsel for CSI an e-mail on December 30 at 10:51 p.m. denying CSI's request for an adjournment, and stating that the Committee's hearing would take place as scheduled, as "CSI/WTEC was given adequate time to make preparations for Tuesday's meeting." (Tango Cert., ¶ 5; Ex. 2.)

On December 31, counsel for CSI responded to Knecht's December 30 e-mail with a letter requesting that the Committee reconsider its denial of CSI's request for a postponement of the January 3, 2012 hearing. In support of CSI's request for reconsideration, counsel for CSI explained that CSI was not given adequate notice of the hearing, CSI had never received a copy of the grievance or any other documentation

3

concerning the grievance, Article 1.6 of the CBA[2] was not complied with as the meeting required under the first step of the grievance process was never held, CSI only learned that Local 351 had allegedly filed a grievance when it received Knecht's December 28 letter, CSI had no knowledge or information about the allegations raised by Local 351, and Local 351 would not be prejudiced by adjourning the hearing.  Counsel for CSI asserted that, given these circumstances, conducting the hearing on January 3 would demonstrate the Committee's lack of impartiality.  (Tango Cert., ¶ 6, Ex. 3.)

On December 31, Knecht sent counsel for CSI an email in response to CSI's December 31 letter.  Knecht's email stated that CSI was provided with more time than the 48 hours typically provided for a hearing[3] and that Knecht believed Local 351 "made several attempts" to contact CSI without success.  (Tango Cert., ¶ 7, Ex. 4.)  Knecht sent

---

[2]Article I, Section 1.6 of the CBA provides:

> All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor Management Committee.

(Dick Aff., ¶ 4, Ex. 1 at p. 5.)

[3]The grievance and arbitration procedure is delineated in Article 1 of the CBA. Article I, Section 1.5 of the CBA states:

> There shall be a Labor-Management Committee of three (3) representing the Union and three (3) representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within forty-eight (48) hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

(Dick Aff., ¶ 4, Ex. 1 at p. 4-5.)

counsel for CSI another e-mail on December 31 stating that he reached out to a representative from Local 351 to request that Local 351 postpone the hearing, but his request was denied. (Tango Cert., ¶ 8, Ex. 5.) Counsel for CSI responded to Knecht's email on December 31 by requesting specific information concerning Local 351's "attempts to contact CSI without success," including any documents supporting Knecht's contention. Counsel for CSI also reiterated the previously highlighted "notice, procedural, and due process deficiencies," and its unavailability and the unavailability of CSI to attend the hearing on January 3, which were the bases for its previously requested adjournment of the hearing. (Tango Cert., ¶ 9, Ex. 6.)

On January 2, 2011, at 6:51 p.m., counsel for CSI again emailed Knecht to inform him and the Committee that CSI and its attorneys were not available to attend the January 3 hearing. Counsel for CSI further informed Knecht that CSI was not performing any work in Cumberland County, New Jersey, and that CSI is a completely separate entity from WTEC. Counsel for CSI requested that he be permitted to call in to the January 3 hearing via telephone to place CSI's notice, procedural, and due process objections on the record and request that all previously sent correspondence be placed in the record. (Tango Cert., ¶ 10, Ex. 7.) Later that same night, at 9:05 p.m., Knecht sent an e-mail in response stating that he would speak with Local 351 in the morning and reply to counsel as soon as possible. (Tango Cert., ¶ 11, Ex. 8.) In a subsequent e-mail sent a few minutes later, Knecht informed CSI's counsel that "typically attorneys are not present at labor management hearings. Just other contractors and business agents." (Tango Cert., ¶ 11, Ex. 9.)

Knecht e-mailed counsel for CSI on January 3, 2012 at 9:56 a.m. to notify him

5

that CSI could participate in the 10 a.m. hearing by telephone and consult its attorneys afterwards, but attorneys who "are not in house attorneys of the contractor are not permitted in labor management hearings." (Tango Cert., ¶ 12, Ex. 10.) At 10:08 a.m., counsel for CSI responded to Knecht's email by requesting that the hearing be delayed until 10:30 a.m. so that a representative from CSI could call in to the hearing by telephone to place CSI's notice, procedural, and due process objections on the record. (Tango Cert., ¶ 13, Ex. 11.) To that end, CSI's Associate General Counsel, based in Tampa, Florida, called in to the hearing at 10:30 a.m. on January 3, 2012 to place on the record CSI's "notice, procedural, and due process objections." (Dick Aff., ¶ 9, Ex. 3.)

During Local 351's presentation of its case, Gant, Business Manager of Local 351, served as Chairman of the Committee[4], and presented Local 351's grievance to the Committee, first stating that Local 351 sent a copy of its grievance to CSI, then clarifying that the letter he was referring to was the Committee's December 28, 2011 correspondence scheduling the January 3, 2012 hearing. (Dick Aff., ¶ 10.) After Gant finished presenting Local 351's grievance, CSI's Associate General Counsel placed on the record the notice, procedural, and due process objections previously made, and also

---

[4]Article I, Section 1.7 of the CBA provides:

All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four (4) members of the Committee, two (2) from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting. In the absence of a deadlock, the Labor Management Committee's decision shall be final and binding.

(Dick Aff., ¶ 4, Ex. 1 at p. 5.)

6

informed the Committee that CSI did not have any employees working on the Cumberland County job and that, to his knowledge, the job was being performed by WTEC. (Dick Aff., ¶ 11.) CSI's Associate General Counsel also informed the Committee that CSI and WTEC each has its own employer identification number. (6/11/12 Dick Aff., ¶ 11.) The Committee subsequently informed CSI's Associate General Counsel that it did not need to hear anything further from him, and CSI's Associate General Counsel hung up the phone. (Dick Aff., ¶ 11.)

> The Committee decision, dated January 4, 2012, states:
>
> The Labor Management Committee Convened on January 3, 2012 at 10:00am in the office of Local Union 351 to review L.U. 351's grievance against CSI/WTEC stating that CSI/WTEC has violated L.U. 351's Collective Bargaining Agreement. After careful review of the permitting process, it was concluded that CSI and WTEC are one in the same. It was also concluded that CSI is signatory to L.U. 351 which binds them and WTEC to the Collective Bargaining Agreement. Article IV Section 4.2 of the CBA states that the local shall be the sole source of manpower for projects within its jurisdiction. It was determined that CSI/WTEC performed all electrical work at a permit value of 10 million dollars at 3152 South Delsea Drive, Vineland N.J. 08360 without notifying L.U. 351 or hiring any of their manpower. Therefore, it is the decision of this Labor Management Committee that Local Union 351 shall seek back wages and benefits for all electrical work performed at, or related to, the project at 3152 South Delsea Drive, Vineland N.J. 08360.

(Dick Aff., ¶ 13, Ex. 4.)

CSI filed the instant action to vacate the Committee's arbitration award on March 28, 2012, arguing that the January 4, 2012 arbitration award issued by the Committee should be vacated because CSI was denied a fair hearing, as (1) CSI was never provided with a copy of the grievance that was the subject of the January 3, 2012 hearing; CSI first learned of the alleged grievance when it received the December 28, 2011 correspondence setting the January 3 hearing; (2) CSI was not afforded an opportunity to "adjust" Local

351's dispute prior to the matter being addressed by the Committee, seemingly in violation of Article I, Section 1.6 of the CBA; (3) CSI's request to adjourn the January 3, 2012 proceeding was summarily denied, depriving CSI of the opportunity to investigate the matter and adequately prepare for the hearing, which was CSI's first under the CBA. Further, CSI's General Counsel has sworn that Robert McConathey was never employed by CSI and was not authorized to file permits on behalf of CSI, "and no electrical work was performed on the [Vineland] jobsite by or on behalf of CSI under any permits allegedly filed by Robert McConathey." (6/11/12 Dick. Aff., ¶ 4, 8.)  Rather, McConathey was working for another company as a subcontractor for WTEC. (Id. at ¶ 5.)

On May 24, 2012, Local 351 filed a cross-motion to confirm the January 4, 2012 arbitration award issued by the Committee, arguing that Local 351 and the Committee acted in accordance with the CBA, and CSI is not entitled to more procedure or protection than the CBA provides. Local 351 also argues that the December 20, 2011 letter sent by its counsel provided CSI with sufficient notice that there was a "question in dispute" as contemplated under Article I, Section 1.6 of the CBA.

## Discussion

Joint committee awards are reviewed under the same standards as binding arbitration awards. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 249 v. Western Pennsylvania Motor Carriers Ass'n, 574 F.2d 783, 786 n.3 (3d Cir. 1978) (citing General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co., Inc., 372 U.S. 517 (1963); Bieski v. Eastern Automobile Forwarding Co., 396 F.2d 32 (3d Cir. 1968); Price v. Teamsters, 457 F.2d 605 (3d Cir. 1972)).

Pursuant to the Federal Arbitration Act, there is a strong presumption in favor of enforcing arbitration awards. Brentwood Medical Assoc. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir. 2005). A district court may only vacate an arbitration award where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators, or either of them; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C. § 10; Hall Street Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584 (2008).

"As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)). This is because "arbitration is a matter of contract," United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960), so if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Eastern Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000) (quoting Misco, 484 U.S. at 38).

Though urged to do so by Petitioner, the Court need not delve into the Committee's determination that CSI and WTEC were "one in the same," whether under

9

an alter-ego theory or a single employer theory, because the arbitrary denial of a reasonable request for postponement of the arbitration may serve as grounds for vacating an award. Such is the case here. Informed that CSI's counsel had only recently been retained, that neither counsel nor CSI were available on January 3 to attend the hearing, and that because CSI had not received a grievance concerning the subject of the hearing, it had no information concerning the nature of the alleged dispute, the Committee nonetheless refused to postpone the hearing, scheduled immediately after a holiday weekend, despite that CSI requested only an additional two weeks to avoid the prejudice of its rights.

## Conclusion

For these reasons,

IT IS ORDERED on this <u>1st</u> day of August, 2012 that the arbitration decision set forth in the Labor-Management Committee's January 4, 2012 letter be, and it hereby is, <u>VACATED</u>.

IT IS FURTHER ORDERED that Petitioner's motion [2] is <u>GRANTED</u>; and Respondent's cross-motion [12] is <u>DENIED</u>.

<u>/s/ Joseph H. Rodriguez</u>
JOSEPH H. RODRIGUEZ
U.S.D.J.